# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILLIP L. STERN, RECEIVER FOR ENTERPRISE TRUST CO., | |
| Plaintiff, | No. 09 C 794 |
| v. | Judge James B. Zagel |
| LEGENT CLEARING LLC, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In March 2008, the U.S. Securities and Exchange Commission filed an action against Enterprise Trust Co. ("Enterprise") and two of its principals. On September 23, 2008, I issued an order authorizing the court-appointed receiver "to bring such lawsuits or other actions, in this proceeding or elsewhere, on behalf of Enterprise and its clients, against others who may have engaged in unlawful conduct or may otherwise be liable to Enterprise or to Enterprise's clients." Thereafter, on February 9, 2009, the receiver filed a seven-count complaint against Legent, alleging liability for Legent's conduct "in connection with Enterprise's trading and fraudulent use of its client's assets to provide collateral for highly speculative trading strategies that were contrary to the instructions of certain of Enterprise's clients, were detrimental to their interests, and which were not fully disclosed to Enterprise's clients." According to the allegations in the complaint, Legent worked with Enterprise to transfer approximately $49 million in customer mutual funds from Advisory Financial Services Corporation ("AFC") to Enterprise's account at Legent. Legent knew that the mutual funds were contained in IRA and 403(b) accounts that could not properly be used for margin, and yet Legent orchestrated the transfer of these

individual customer funds into Enterprise's omnibus account to support margin trading. Further, the complaint alleges that Legent enabled the transfer even though it knew that the paperwork signed by the individual account holders did not permit the use of their assets for margin trading.

Legent now moves to dismiss the complaint pursuant to Rule 12(b)(1) on the basis that the receiver lacks standing because the receiver's claims are duplicative of investors' claims in other jurisdictions. Alternatively, Legent moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

**I. Standard of Review**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on such a motion, I accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The same standard applies to a motion to dismiss based on standing under Rule 12(b)(1). *Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253, 256-57 (N.D. Ill. 1992) (citations

omitted). The plaintiff bears the burden of establishing that it meets the requirements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**II. Discussion**

*A. The Receiver Has Standing*

In support of its argument that the receiver lacks standing, Legent relies on a "promise" made by the receiver in its response to objections filed by Enterprise clients to the receiver's Proposed Plan for the Allocation of Assets. In that response, the receiver stated:

> The Receiver will not pursue any litigation if the Receiver determines that potential litigation is not viable, unlikely to merit the cost associated with pursuit of the claim, or believes that his efforts would be duplicative of any actions that may be brought by government agencies or private litigants.

In approving the Plan, I noted that the amount of funds held back by the receiver in order to fund ongoing investigation and potential litigation against third parties "is not so large as to encourage the Receiver to pursue inappropriate claims which the Receiver correctly defines as litigation which 'is not viable, unlikely to merit the cost associated with pursuit of the claim . . . or duplicative of any action that may be brought by government agencies or private litigants.'"

Legent is currently party to five separate proceedings brought by former clients of Enterprise, including four arbitrations administered by the Financial Industry Regulatory Authority ("FINRA").[1] Legent maintains that the claims asserted in the receiver's complaint are improper because they are entirely duplicative of the claims already being pursued by private claimants in the four arbitrations that were pending against Legent at the time this case was filed.

---

[1] A fifth action, brought in the Eastern District of California, was voluntarily dismissed on April 10, 2009.

3

Legent argues that both the receiver and the private claimant allege that Legent is liable under the same basic factual predicate (the allegedly improper allowance of margin trading using collateral that was either unauthorized or unsuitable), rely on the same or parallel legal theories (failure to prevent and/or aiding and abetting the conduct of Enterprise), and demand substantially overlapping damages (the private claimants allege losses of approximately $9.2 million while the receiver alleges losses of between $2 and $11 million).

First, certain claims asserted by the receiver have not been asserted by individual claimants and are thus not duplicative of those individual actions. Those include the receiver's claims against Legent for violation of the Illinois Consumer Fraud Act (Count II), violation of the Illinois Fiduciary Obligations Act (Count IV), for aiding and abetting a breach of fiduciary duty (Count V), and for aiding and abetting a fraud (Count VI).

Second, the receiver seeks to redress the harm done to Enterprise (indeed his only object is to maximize the value of Enterprise for the benefit of its investors), which may be the most viable means of getting money back into the pockets of its rightful owners. *See Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir. 1995). In *Scholes*, the Court of Appeals "[could not] see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated" when the conceivable alternatives included "a series of individual suits by the investors, which, even if successful, would multiply litigation; a class action by the investors-and class actions are clumsy devices; or, most plausibly, an adversary action, in bankruptcy, brought by the trustee in bankruptcy of the corporation if they were forced into bankruptcy." *Id*. So far, the litigation against Legent has already been multiplied by the four individual suits. And, even if recovery is made in those cases, relief will only have been provided to a handful of the harmed investors.

4

Legent further argues that the receiver lacks standing to pursue claims on behalf of Enterprise's customers as a matter of law.

"[A] receiver does not have standing to sue on behalf of the creditors of the entity in receivership. Like a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit." *Scholes*, 56 F.3d at 753 (citations omitted). In *Scholes*, the Court of Appeals held that the receiver, who had also been appointed the corporations' receiver, had standing to sue on behalf of the corporations because they were entitled to the return of the money that the defrauder had improperly diverted from them. *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997).

Here, the receiver has standing to sue Legent because the receiver seeks to redress a distinct harm to Enterprise, not just to its customers. Legent's alleged improper approval of custodial assets to secure margin loans damaged Enterprise by exposing it to customer claims for losses arising from the erosion of the assets held by Legent. Just like the receiver in *Scholes*, the receiver here has standing to sue on behalf of Enterprise because Enterprise was entitled to the money that the defrauder improperly diverted from it, including compensation for commissions and margin interest that Legent took from Enterprise and trading losses facilitated by Legent.

*B. The Receiver States a Claim Upon Which Relief May Be Granted*

Legent alternatively seeks to dismiss the receiver's claims pursuant to Rule 12(b)(6) for failure to sufficiently plead the elements of those claims, as well as arguing that Legent, as a clearing broker, cannot be liable for the acts of its introducing brokers or its introducing brokers'

5

customers. Indeed, a clearing broker, when acting within the scope of its traditional clearing functions, does not owe a fiduciary duty to customers of its introducing broker and cannot be held liable for the acts or omissions of its introducing brokers. *See McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002) (citations omitted). Courts have, however, allowed cases against clearing brokers to proceed based on allegations that the clearing broker acted outside its traditional functions or "asserted control" over the introducing broker's business. *Id.* at 353, 355 (clearing broker that "becomes actively and directly involved in the introductory broker's actions . . . may expose itself to liability with respect to the introductory broker's misdeeds.").

The receiver argues that Legent went beyond the traditional functions of a clearing broker when it knowingly enabled Enterprise to misuse the AFC accounts. For example, Legent engaged in direct conversations with Enterprise, advised Enterprise on trading strategies, and controlled the ability of Enterprise customers to withdraw assets from their accounts, including retirement accounts that could not properly be pledged to collateralize Enterprise's margin trading. In addition, the receiver alleges that Legent performed its normal, ministerial clearing functions with actual knowledge that it was aiding and abetting Lohmeier's fraud and Enterprise's breach of fiduciary duty. Actual knowledge of any fraud or breach of fiduciary duty is an additional factor that weighs against the Legent's attempt to avoid liability. *See McDaniel*, 196 F. Supp. 2d at 362; *Cannizzaro v. Bache, Halsey, Stuart Shields, Inc.*, 81 F.R.D. 719, 721 (S.D.N.Y. 1979) (denying motion to dismiss aiding and abetting claim against clearing firm where facts might show that clearing firm performed more than mere mechanical functions for introductory broker); *Faturik v. Woodmere Sec. Inc.*, 442 F. Supp. 943, 945 (S.D.N.Y. 1977).

6

Assuming, as I must for purposes of this motion, that allegations contained in the complaint are true, the receiver has stated sufficient facts to properly plead the elements of each of its claims, with both the specificity and particularity required for those based on fraud. Moreover, the extent of Legent's involvement in any introducing broker's activities is a factual determination not properly resolved on a motion to dismiss.

**III. Conclusion**

For the foregoing reasons, Legent's motion to dismiss the receiver's complaint pursuant to Rules 12(b)(1) and 12(b)(6) is denied.[2]

ENTER:

James B. Zagel
United States District Judge

DATE: July 28, 2009

---

[2] There may or may not be substantive defenses to some or all of the receiver's claims on *in pari delicto* grounds considering that the standing of a receiver appointed under the securities laws may be different than that of a trustee in bankruptcy. *See Grede v. Bank of New York*, No. 08 C 2582, 2009 WL 188460, at *9 (N.D. Ill. Jan. 27, 2009). There may be reasons in the future for the receiver to reconsider whether this suit is duplicative of private actions if the breadth of claims expands or with the occurrence of more inclusive private actions than the four individual arbitration proceedings currently pending. In any event, none of these potential circumstances can be grounds for Rule 12 dismissal.